## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KERSTIN R. GEBA,

        Plaintiff,

v.                                    ACTION NO. 2:14cv612

KIMBERLY E. NORRIS, and
LOIS C. THOMPSON,

        Defendants.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

On December 2, 2014, plaintiff filed this action pursuant to 42 U.S.C. § 1983, seeking to redress alleged violations of her constitutional rights.   Specifically, plaintiff alleges that defendants violated her rights under the Fourth Amendment to the United States Constitution by unreasonably seizing her and utilizing excessive force during her arrest.   Compl., ECF No. 1. Plaintiff seeks $500,000.00 in damages.   Compl.

This matter is before the Court on defendants' motion for summary judgment.   ECF No. 23.   An order of reference, dated October 20, 2015, assigned the defendants' motion to the undersigned.   ECF No. 35.   Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, it is hereby **RECOMMENDED** that defendants' motion for summary judgment be **GRANTED in part** and **DENIED in part** for the reasons discussed below.

## I.    PROCEDURAL HISTORY

Defendants answered the complaint on January 26, 2015, and the case was set for a jury trial on October 14, 2015.   ECF Nos. 9, 11.   A final pretrial conference was held on August 28, 2015.   ECF No. 12.   Defendants filed the motion for summary judgment on September 28, 2015.   ECF No. 23.   Plaintiff filed a response on October 12, 2015, and defendants filed a reply on October 19, 2015.   ECF Nos. 32, 34.   The case was removed from the trial calendar until the resolution of the motion for summary judgment, which was referred to the magistrate judge on October 20, 2015, for report and recommendation.   ECF No. 35.

## II.    FACTUAL BACKGROUND

The following facts have been gathered from the complaint, the stipulated facts in the final pretrial order, plaintiff's deposition, the declarations of the parties, and exhibits appended to the summary judgment filings.   Where there are any inconsistencies among these sources, the Court recounts the facts in the light most favorable to plaintiff, while also noting pertinent factual disputes.

On June 7, 2014, plaintiff attended a music concert at Farm Bureau Live in Virginia Beach, Virginia.   Stipulated Facts, Final Pretrial Order at 2, ECF No. 12.   Plaintiff was in a "private, enclosed" area at the venue.   Compl. ¶ 9.   This area, referred to as the "party box," is on the back row of the sitting area of the venue in front of the lawn area.   Pl. Dep. 17:2-8, ECF No. 24-1.   During the concert, plaintiff consumed four, sixteen or twenty ounce cans of beer and did not eat any food.   Pl. Dep. 15:3-13, 26:16-18.

A scuffle that did not involve plaintiff broke out between individuals within the party box.   Compl. ¶¶ 10-11; Pl. Decl. ¶ 4, ECF No. 32-1.   As a result of the scuffle, defendant Lois

2

C. Thompson ("Thompson"), a sergeant in the Virginia Beach Sheriff's Office, responded to a call from event staff at Farm Bureau Live to provide officer assistance concerning plaintiff. Thompson Decl. ¶ 3, ECF No. 24-2.   Thompson and one or more sheriff's office employees escorted the individuals who were inside the party box, including plaintiff, out of the concert. Pl. Decl. ¶ 5; Thompson Decl. ¶ 3.   Both Thompson and defendant Kimberly E. Norris ("Norris"), a corporal in the Virginia Beach Sheriff's Office present in the security trailer when Thompson and plaintiff arrived, state that plaintiff smelled of alcohol and exhibited clear signs of intoxication, including unsteady gait, bloodshot eyes, and slurred speech.   Thompson Decl. ¶ 3; Norris Decl. ¶ 3.   Thompson asserts that her "goal" in bringing plaintiff to the security trailer was not to arrest her, but rather:   (1) to photograph plaintiff and conduct an eviction procedure;[1] and (2) to find "a sober responsible person to pick her up and transport her home safely." Thompson Supp. Decl. ¶¶ 4a, 4b, 4c, 4e, ECF No. 31-1.

According to Thompson, plaintiff was advised that she was not under arrest prior to entering the security trailer.   Thompson Suppl. Decl. ¶ 4c.   Plaintiff states that she was not told why she was taken to the trailer.   Pl. Decl. ¶ 5.   She further contends that, without being unruly or disruptive, she repeatedly asked why she was not allowed to leave and that the defendants ignored her inquiries.[2]   Pl. Decl. ¶¶ 6-8.   At some point, plaintiff "decided that

---

[1]  Pursuant to this procedure, once an individual is evicted, she receives a barring notice and may not return to the venue grounds for one year.   Thompson Supp. Decl. ¶¶ 4a, 4b.

[2]  Contrary to plaintiff's account, Thompson contends that plaintiff initially refused to provide identification when asked, she refused to answer questions, she initially refused to go inside the trailer, and she was "combative, aggressive, and noncompliant, including but not limited to screaming, yelling, cussing, not staying in a seated position."   Thompson Decl. ¶ 3.   Norris echoes this assessment of plaintiff's behavior inside the trailer.   Norris Decl. ¶ 3, ECF No. 24-3. Thompson also states that, when Norris attempted to take a picture of plaintiff, she "stood up and

[she] was going to leave the trailer, as at this point in time [she] was not under arrest and was not restrained in any way." Pl. Decl. ¶ 9.   Plaintiff was commanded by Thompson not to leave the trailer, but she defied Thompson's command and continued in her attempt to leave.   Compl. ¶¶ 18-20.

According to plaintiff, Thompson then tackled her to the ground.[3]   Pl. Decl. ¶ 11. After the takedown, plaintiff began to flail and kick her legs wildly, and Norris had to assist Thompson in placing handcuffs on plaintiff.   Thompson Suppl. Decl. ¶ 4g.   While this occurred, Thompson sat on plaintiff's back, and plaintiff reports that she could not breathe.   Pl. Decl. ¶¶ 12-13.   After handcuffing plaintiff, Thompson and Norris arrested her for public intoxication and resisting arrest.   Thompson Decl. ¶ 3; Compl. ¶ 23.   After catching her breath, plaintiff states that she cried and pleaded numerous times for the officers to loosen the handcuffs. Pl. Decl. ¶ 14.

Plaintiff was transported by van to the Virginia Beach City Jail.   Thompson Suppl. Decl. ¶ 4h; Pl. Dep. 19:5-7.   Upon receiving sworn testimony from Thompson, a Virginia Beach magistrate issued an arrest warrant against plaintiff for resisting arrest, pursuant to Virginia Code § 18.2-479.1, and a summons for public intoxication, pursuant to Virginia Beach City Ordinance 23-22.   Thompson Decl. ¶ 4; Def's. Mot. Sum. J. Ex. 4; Pl. Dep. 19:2-4.   Plaintiff was not released on bond, and she stayed in jail until Monday, June 9, 2014, because she refused to

---

made an assertive physical move towards Norris and tried to swat the camera out of Norris' hands."   Thompson Supp. Decl. ¶ 4e.

[3] For her part, Thompson, who received a certification from the Department of Criminal Justice Services as a defensive tactics instructor, described using a defensive tactics maneuver known as an "escort to a takedown," where she placed her hands on two points of contact on plaintiff's arm and "brought her to the ground in a safe manner for the purpose of placing handcuffs on her." Thompson Suppl. Decl. ¶¶ 4e, 4f.

4

answer the questions asked by the magistrate to make a bail determination.   Def's. Mot. Sum. J. Ex. 7 at 6-7; Compl. ¶ 26.   Plaintiff would not tell the magistrate where she worked.   Pl. Dep. 19:8-13.   Notes from plaintiff's intake screen at the Virginia Beach City Jail indicate plaintiff was combative, evasive, and agitated and reflect that plaintiff admitted to drinking alcohol at the venue.   Def's. Mot. Sum. J. Ex. 5 at 2-3.   An intake questionnaire indicates that plaintiff answered "No" to the question "[a]re there any Medical issues past or present we should know about."   Def's. Mot. Sum J. Ex. 6.

On September 24, 2014, plaintiff pled guilty to and was convicted of public intoxication. Pl. Dep. 20:10-15; Thompson Decl. ¶ 5; Stipulated Facts, Final Pretrial Order at 2; Def's. Mot. Sum. J. Ex. 7 at 4.   In connection with the public intoxication and resisting arrest charges, plaintiff had to attend anger management classes.   Pl. Dep. 20:16-19.   Plaintiff's charge of resisting arrest was reduced to obstruction of justice with a deferred finding, pending six months of good behavior and completion of anger management counseling.   Def's. Mot. Sum. J. Ex. 8; Thompson Decl. ¶ 5; Norris Decl. ¶ 5.   The obstructing justice charge was *nolle prossed* on the prosecution's motion on September 24, 2014.   Def's. Mot. Sum. J. Ex. 7 at 4.

As a result of the officers' conduct, plaintiff contends she sustained the following damages:   pain, suffering, inconvenience, lost wages, medical bills, and mental anguish. Compl. ¶ 44; Def's. Mot. Sum. J. Ex. 8.   Due to the tightness of the handcuffs, plaintiff reports having nerve damage in her wrist and receiving treatment from numerous doctors and hand specialists.   Pl. Decl. ¶ 15.   Plaintiff is a professional engineer who uses her hands for a living, and she reports having no problems with her hands before this incident.   Pl. Decl. ¶¶ 16, 17.   A progress note from Lance B. Davlin, M.D., dated November 12, 2014, assesses plaintiff with

"dysfunction, superficial branch of the radial nerve, right wrist." Def's. Mot. Sum. J. Ex. 9. The note indicates plaintiff "reports some mild diminution of MP and IP joint motion; but overall, she states she is doing superbly and she feels much better than she did previously." Def's. Mot. Sum. J. Ex. 9.

## III.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary judgment and directs a Court to grant such motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party "seeking summary judgment always bears the initial responsibility of informing the [court] of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted). Subsequently, the burden shifts to the nonmoving party to present specific facts demonstrating that a genuine dispute of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). For the evidence to present a "genuine" dispute of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

6

A "party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). When ruling on a summary judgment motion, "a court may also give credence to other facts supporting the movant, regardless of their source, if such facts are not challenged by the non-moving party because a failure to challenge proffered facts may render such facts admitted." *XVP Sports, LLC v. Bangs*, No. 2:11cv379, 2012 WL 4329258, at *4 (E.D. Va. Sept. 17, 2012).

As specified in Local Civil Rule 56(B), "the Court may assume that facts identified by the moving party in its listing of [undisputed] material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. Civ. R. 56(B). In opposing the defendants' motion, plaintiff has failed to comply with the local rule by not including in her brief a "specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue of material fact." *Id.* Notwithstanding this failure, the Court has construed the facts in the light most favorable to plaintiff and identified which material facts are, and are not, disputed.

## IV.   ANALYSIS

Qualified immunity protects government officials performing discretionary functions from liability, so long as "their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In light of those interests, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted).

Qualified immunity analysis consists of two steps: a court must decide whether a constitutional violation occurred and, if so, whether the right violated was "clearly established." *Pearson*, 555 U.S. at 232. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. In determining whether a particular right is "clearly established," courts look to whether "it would be clear to an objectively reasonable officer that his conduct violated [the] right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). A determination that a right is clearly established may be founded upon "controlling authority in the jurisdiction in question or on a 'consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Thus, the Court may find a clearly established right in "the decisions of the Supreme Court, [the Fourth Circuit], and the highest court of the state in which the case

arose," as well as "a consensus of persuasive authority from other jurisdictions, if such exists." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279-80 (4th Cir. 2004) (internal quotation marks omitted).   Conversely, "if there are no cases of controlling authority in the jurisdiction in question, and if other appellate federal courts have split on the question of whether an asserted right exists, the right cannot be clearly established for qualified immunity purposes."   *Rogers v. Pendleton*, 249 F.3d 279, 288 (4th Cir. 2001).

## A.   Excessive Force

Plaintiff's excessive force claim is based on the allegations that:   (1) Thompson tackled her to the ground and sat on her back in such a way that restricted her breathing, and (2) Thompson and Norris excessively tightened the handcuffs and refused to loosen them resulting in nerve damage to her wrist.   The Fourth Amendment prohibits officers from employing "excessive force to seize a free citizen."   *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).   Even so, qualified immunity protects officers from the "hazy border between excessive and acceptable force."   *Deavers v. Vasquez*, 57 F. Supp. 3d 599, 606 (E.D. Va. 2014).   To show excessive force, plaintiff must demonstrate that the officers' use of force was "objectively unreasonable under the circumstances."   *Miller v. Parrish*, No. 3:12cv873, 2013 WL 1868028, at *7 (E.D. Va. May 2, 2013) (citing *Graham*, 490 U.S. at 395).   To assess plaintiff's excessive force claim, the Court must consider the totality of the circumstances, including "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"   *Meyers v. Baltimore County*, 713 F.3d 723, 732-33 (4th Cir. 2013) (quoting *Graham*, 490 U.S. at 396).   Moreover, "the extent of the

plaintiff's injury is also a relevant consideration." *Jones*, 325 F.3d at 527.   With these factors

in mind, the Court will separately examine the force used to restrain plaintiff and prevent her exit

from the security trailer, as well as the defendants' use of tight handcuffs, in order to determine

whether either or both officers are entitled to qualified immunity.[4]

1.   **Defendants' Efforts to Restrain Plaintiff When She
     Attempted to Leave the Security Trailer[5]**

Construing the facts in the light most favorable to plaintiff, Thompson tackled plaintiff to

the ground[6] and sat on her back, and Norris handcuffed her in order to restrain her when she

attempted to leave the security trailer.   To show that this conduct constituted excessive force,

plaintiff   must   demonstrate   that   the   conduct   was   "objectively   unreasonable   under   the

---

[4] The Court recognizes that "[a]rtificial divisions in the sequence of events do not aid a court's evaluation of objective reasonableness." *Yates v. Terry*, __ F.3d __, No. 15-1555, 2016 U.S. App. LEXIS 5903, at *12 (4th Cir. Mar. 31, 2016) (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)).   Nonetheless, separate analysis is appropriate in certain cases because "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." *Waterman*, 393 F.3d at 481.   The Court concludes that, in the present case, a natural division exists between plaintiff's contention that defendants used excessive force to restrain her and plaintiff's assertion that defendants kept excessively tight handcuffs on her after she was restrained.   Therefore, separate analysis is appropriate here.

[5] Defendants' efforts to restrain plaintiff and prevent her exit from the security trailer included taking her to the ground, sitting on her back, and handcuffing her.   The Court notes that plaintiff accuses Thompson alone of using excessive force to take her to the ground and in sitting on her back.   Compl. ¶ 21; Pl. Decl. ¶ 11.   Plaintiff states that Norris then placed the handcuffs on her.   Pl. Decl. ¶ 12.

[6] While both parties agree that plaintiff was taken to the ground in some form for the purpose of handcuffing, each party describes the encounter differently.   Plaintiff alleges that she was "tackled to the hard ground." Pl. Decl. ¶¶ 11-12.   Conversely, Thompson maintains that she used an "escort to a takedown" maneuver to bring plaintiff "to the ground in a safe manner for the purpose of placing handcuffs on her." Thompson Supp. Decl. ¶ 4e.   Because the facts must be construed in the light most favorable to plaintiff at the summary judgment stage, the Court will hereinafter refer to Thompson's conduct as a tackle for purposes of deciding whether she is entitled to qualified immunity.

10

circumstances." *Miller*, 2013 WL 1868028, at *7.   In the context of this case, the misdemeanor offenses of public intoxication and resisting arrest are lesser crimes.[7]   Also, the undisputed facts do not indicate that plaintiff posed an immediate threat to the safety of the officers.[8]   Nonetheless, the undisputed facts show that, during an investigatory encounter, plaintiff attempted to leave the trailer, despite Thompson's command for her to stay.   Compl. ¶¶ 19-20; Pl. Decl. ¶¶ 9-10.

Plaintiff's refusal to comply with Thompson's command for her to stay is critical to assessing the reasonableness of the defendants' conduct.   In *Sloan v. Dulak*, plaintiff brought an excessive force claim alleging that officers used excessive force in tackling him to the ground after he fled from the police on foot.   868 F. Supp. 2d 535, 539 (W.D. Va. 2012).   Upon defendants' motion for summary judgment, the key factual issue was whether plaintiff had complied with an officer's order to freeze and place his hands in the air before officers tackled him to the ground.   *Id.* at 540.   The court denied defendants' motion for summary judgment as to this issue after finding that "the factual issue of how long [plaintiff] was stopped prior to being tackled is dispositive of whether [plaintiff]'s constitutional rights were violated."   *Id.*   The court explained that, if plaintiff had been "stopped for a sufficient amount of time to indicate he was no longer evading or resisting arrest and posed no threat to the Officers' safety, the Officers would likely not have been justified in tackling him."   *Id.* at 542.   Conversely, if plaintiff had been "still actively evading arrest or had only just stopped," the officers would have been acting

---

[7] The crime of public intoxication is a class 4 misdemeanor.   Va. Code Ann. § 18.2-388.   The crime of resisting arrest is a class 1 misdemeanor.   Va. Code Ann. § 18.2-479.1.

[8] While there may not have been an *immediate* threat to officer safety, the Court notes that the undisputed facts indicate that plaintiff was a potential threat to herself or others due to her intoxicated state.   Thompson Decl. ¶ 3; Pl. Dep. 15:3-13, 26:16-18.

reasonably in tackling plaintiff.   *Id.*

Because the undisputed facts here show that plaintiff was not stopped, and was in fact attempting to flee the trailer when she was tackled to the ground, Thompson's conduct was reasonable.   Moreover, Thompson acted reasonably in sitting on plaintiff's back, while attempting to restrain and handcuff her, in light of the fact that plaintiff "began to flail and kicked her legs wildly trying to buck and kick [Thompson]" while she was on the ground.[9] Thompson Supp. Decl. ¶ 4g.   Since plaintiff was attempting to flee and kick Thompson, the initial placement of handcuffs on plaintiff in order to restrain her was reasonable as well.

In addition, plaintiff does not appear to have suffered an allegedly serious injury from the efforts to restrain her.   To construe the facts in the light most favorable to plaintiff, the Court credits her account that she had difficulty breathing when Thompson tackled her and sat on her back.   Nonetheless, the record contains no evidence that plaintiff suffered any physical injury due to these actions, which suggests that Thompson used a reasonable amount of force to promptly subdue plaintiff.   In light of the totality of the circumstances, the Court finds that no constitutional violation occurred with respect to defendants' conduct in restraining plaintiff when she attempted to exit the security trailer.

Furthermore, cases in other federal circuits, as well as in this one, have not clearly established that the Fourth Amendment prohibited defendants' conduct in the situation they confronted with plaintiff.   Tackling a stationary individual, who is not resisting arrest or attempting to flee, constitutes excessive force in violation of the Fourth Amendment.   *See*

---

[9] Though plaintiff contends that she did not act "unruly or disruptive" when initially brought to the trailer and while asking questions about her status there, Pl. Decl. ¶ 8, she nowhere disputes Thompson's assertion that she flailed and kicked her legs after Thompson tackled her to the ground.

*Raiche v. Pietroski*, 623 F.3d 30, 39 (1st Cir. 2010) (holding that officers used excessive force by tackling a parked motorcyclist who was not fleeing or resisting arrest); *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008) ("[T]he right to be free from physical force when one is not resisting the police is a clearly established right."); *Blankenhorn v. City of Orange*, 485 F.3d 463, 478-79 (9th Cir. 2007) (determining that police violated a suspect's Fourth Amendment rights by tackling him, despite the fact that he did not actively resist being handcuffed).   On the other hand, the Fourth Circuit has confirmed that officers are allowed to use proportionate force when a suspect resists arrest by emphasizing that deciding otherwise "would be inviting any suspect who is unhappy about an arrest to resist that arrest in the hopes that the officers will simply desist rather than risk liability." *Brown*, 278 F.3d at 369-70 (finding that an officer did not use excessive force in handcuffing plaintiff and escorting her to a police vehicle to arrest her for failing to obey another officer's orders); *see also Redding v. Boulware*, 501 F. App'x 238, 242 (4th Cir. 2012) (upholding the district court's determination that the officer did not use excessive force in forcing plaintiff's wrists into handcuffs because she resisted arrest throughout the entirety of the encounter).   Based on the relevant case law, the Court cannot determine that only a "plainly incompetent" officer or one who "knowingly violate[s] the law" would have acted as defendants did. *Hunter*, 502 U.S. at 229.

The defendants did not commit a constitutional violation by forcibly restraining plaintiff, and the case law has not clearly established that the defendants' conduct was an inappropriate response to plaintiff's behavior.   Therefore, the Court **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** as to the efforts to restrain plaintiff when she attempted to leave the security trailer.

13

2.    **The Use of Tight Handcuffs**[10]

To establish an excessive force claim based on unduly tight handcuffing, plaintiff must show that the manner of handcuffing her was objectively unreasonable in light of the surrounding circumstances.   As discussed above, the crimes at issue, public intoxication and resisting arrest, are lesser crimes.   Furthermore, any potential threat plaintiff posed to officer safety dissipated once the officers secured her in handcuffs, and the defendants do not contend that plaintiff tried to resist arrest after she was handcuffed.   In addition, while the record concerning plaintiff's handcuffing-related injury remains thin, plaintiff contends that she sustained "long term and/or permanent" nerve damage in her wrist.   Compl. ¶ 25; Pl. Decl. ¶ 15.    Plaintiff maintains that she sought necessary medical treatment for this injury and, indeed, Dr. Davlin's progress note assesses plaintiff's injury as "dysfunction, superficial branch of the radial nerve, right wrist."   Def's. Mot. Sum. J. Ex. 9.   Some passages from the same progress report, the only medical record submitted by the parties, suggest that plaintiff did not sustain a permanent, debilitating injury.   For example, plaintiff reported to Dr. Davlin that her numbness returned to normal and, while she occasionally felt sharp pain when reaching out and mild diminution of joint motion, she described doing "superbly" and feeling "much better than before."   *Id.*

Even so, taken in the light most favorable to plaintiff, the facts suggest that she sustained more than an inconsequential injury.   *See Deavers*, 57 F. Supp. 3d at 608 (finding that qualified immunity shielded defendant from liability for excessively forceful handcuffing where plaintiff alleged no significant physical harm and sustained only "superficial bruises and numbness in her

---

[10] Plaintiff accuses both officers of leaving her in excessively tight handcuffs after she complained of the tightness numerous times.   Pl. Decl. ¶ 14.

right thumb," injuries that resolved themselves without any necessary medical treatment").
Furthermore, plaintiff's declaration indicates that defendants knew that they placed handcuffs on
her in a painful and injurious manner because she asked them "numerous times" to loosen them.
Pl. Decl. ¶ 14.  If plaintiff can show that defendants did indeed know of plaintiff's pain and
refused to loosen the handcuffs, and plaintiff suffered a substantial injury as a result, a Fourth
Amendment violation may have occurred.

Case law has clearly established that unduly tight handcuffing may constitute excessive
force in circumstances similar to those in the present case.  A survey of excessive force case
law reveals that other appellate courts have determined that unduly tight handcuffing constitutes
excessive force.  *See Thompson v. Lake*, 607 F. App'x 624, 625 (9th Cir. 2015) ("It is clearly
established that 'overly tight handcuffing can constitute excessive force'"); *Vondrak v. City of
Las Cruces*, 535 F.3d 1198, 1209 (10th Cir. 2008) (stating that "the right to be free from unduly
tight handcuffing was 'clearly established'—as were the contours of the right"); *Martin v.
Heideman*, 106 F.3d 1308, 1313 (6th Cir. 2005) (construing an "excessively forceful
handcuffing" claim under "the general excessive force rubric"); *Kopec v. Tate*, 361 F.3d 772,
777 (3d Cir. 2004) (finding that plaintiff's alleged facts that an officer kept tight handcuffs on
him and failed to respond to his pleas to loosen them, if proven, would establish excessive force).
Although these cases do not constitute binding precedent, the Court finds the appellate court
consensus significant enough to show a clearly established right.

Furthermore, while Fourth Circuit precedent does not suggest that tight handcuffing alone
necessarily violates the Fourth Amendment, relevant case law collectively indicates that forceful
handcuffing, coupled with significant injury, may constitute excessive force in violation of the

15

Fourth Amendment.   In an excessive force case based on tight handcuffing, *Cooper v. City of Virginia Beach*, the Court granted defendants' motion for summary judgment because plaintiff did not allege or offer proof of lasting or serious injury.   817 F. Supp. 1310, 1319 (E.D. Va. 1993).   The Court emphasized that "the presence, nature, and extent of any resulting injury constitute important elements in the reasonableness calculus."   *Id.* at 1314.   Also, in *Brissett v. Paul*, the Fourth Circuit affirmed the district court's determination that the officer did not use excessive force to make an arrest because the arrestee did not sustain "any major physical injury."   No. 97-6898, 1998 WL 195945, at *4 (4th Cir. Apr. 6, 1998).   Lastly, in *Hales v. City of Newport News*, the Court found that qualified immunity did not shield an officer from liability for plaintiff's excessive force claim when she alleged that he over-tightened her handcuffs and refused to loosen them, and she suffered a "serious and permanent injury" as a result.   No. 4:11cv28, 2011 WL 4621182, at *11 (E.D. Va. Sept. 30, 2011).   Thus, Thompson and Norris were properly on notice that excessively tight handcuffing leading to significant injury could amount to excessive force.

Qualified immunity cannot shield Thompson and Norris from liability for plaintiff's handcuffing-based excessive force claim at the summary judgment stage of this proceeding because plaintiff's version of events[11] suggests that a constitutional violation occurred and excessive force case law clearly establishes that unduly tight handcuffing may be unreasonable. Accordingly, the Court **RECOMMENDS** that defendants' motion for summary judgment be **DENIED** as to the use of excessively tight handcuffs.

---

[11] The Court notes that there is a dispute of fact regarding whether plaintiff was, in fact, injured by excessively tight handcuffing.   Defendants note that a jail intake questionnaire indicates that plaintiff answered "No" to the question "[a]re there any Medical issues past or present we should know about."   Def's. Mot. Sum J. Ex. 6.

**B.** **Unreasonable Seizure**

Plaintiff's unreasonable seizure claim raises two separate issues. First, the Court must determine whether plaintiff's initial encounter with Thompson constituted a seizure requiring reasonable suspicion or probable cause. Second, the Court must determine whether plaintiff's eventual arrest constituted false arrest. The Court will address each issue in turn.

As an initial matter, the Court notes that "not all encounters between citizens and law enforcement officers constitute seizures within the contemplation of the Fourth Amendment." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). The Supreme Court has established three categories of encounters between police officers and citizens: consensual encounters, investigatory stops, and arrests. This Court has described consensual encounters as "brief interactions between citizens and law enforcement that require no justification, are not seizures and do not implicate Fourth Amendment protections." *United States v. Cross*, No. 3:14mj245, 2014 WL 5162379, at *5 (E.D. Va. Oct. 14, 2014) (citing *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002)). Arrests fall at the other end of the spectrum and require probable cause. *Id.* Lastly, investigatory stops, or "*Terry* stops," fall on the spectrum between consensual encounters and full arrests and require "reasonable, articulable suspicion of criminal activity." *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 460 (4th Cir. 2013) (citing *Terry*, 392 U.S. at 21). *Terry* stops allow officers to detain individuals on less than probable cause to maintain the status quo and to confirm or dispel suspicions of criminal activity quickly. *United States v. Sharpe*, 470 U.S. 675 (1985).

The undisputed facts developed at this stage of the proceeding indicate that Thompson had an investigatory encounter with plaintiff that ripened into a full-scale arrest. In response to

a call from event staff concerning a "scuffle," Thompson responded to the concert venue to deal with plaintiff.   Thompson Decl. ¶ 3; Thompson Supp. Decl. ¶ 4a.   After encountering plaintiff, Thompson observed that she appeared to be intoxicated, as evidenced by her unsteady gait, slurred speech, and bloodshot eyes.   Thompson Decl. ¶ 3.   Thus, Thompson's investigatory stop of plaintiff and Thompson's decision to escort her to the security trailer was supported by, at a minimum, reasonable, articulable suspicion that plaintiff was publicly intoxicated in violation of the law.[12]   See Santos, 725 F.3d at 460.   Therefore, although plaintiff was seized and she was not free to leave during this investigatory detention, see United States v. Mendenhall, 446 U.S. 544, 554 (1980), this seizure was lawful.   After Thompson took plaintiff to the trailer and kept her confined there with the goal of giving her a barring notice and finding a responsible person to safely transport her home, Thompson's reasonable, articulable suspicion that plaintiff was publicly intoxicated was not dispelled, but came to be confirmed by plaintiff's inappropriate behavior in the trailer that ultimately led to her arrest.   Accordingly, Thompson did not violate plaintiff's Fourth Amendment rights by escorting her from the concert and detaining her in the security trailer for investigatory purposes.

To the extent plaintiff's unreasonable seizure allegations support a claim for false arrest, such a claim also fails.   To establish a false arrest claim, plaintiff must show that the officers effectuated an unreasonable seizure under the Fourth Amendment by arresting her without probable cause.   Brown, 278 F.3d at 367.   Probable cause to arrest depends on "the totality of

---

[12] Furthermore, Thompson's decision to move plaintiff from the party box to the security trailer did not exceed the permissible scope of the investigatory stop because her actions served the "legitimate law enforcement purpose" of preventing further public disturbance during the concert where a scuffle had just broken out.   See Karadi v. Jenkins, 7 F. App'x 185, 192-94 (4th Cir. 2001) (citing Florida v. Royer, 460 U.S. 491, 505 (1983)).

the circumstances known to the officer at the time of the arrest" and exists when sufficient evidence supports an officer's reasonable belief that an offense has been or is being committed. *Id.* Defendants contend that there was probable cause to arrest plaintiff because she was publicly intoxicated. Norris Decl. ¶ 3. In order to prove an absence of probable cause, plaintiff must show that no reasonable officer could have concluded that she was publicly intoxicated. *Brown*, 278 F.3d at 368.

Plaintiff cannot do so. At her deposition, plaintiff testified that, during the concert, she consumed four, sixteen or twenty ounce cans of beer without eating any food. Pl. Dep. 15:3-13, 26:16-18. When Thompson encountered plaintiff that evening, she smelled of alcohol, and exhibited an unsteady gait, bloodshot eyes, and slurred speech. Thompson Decl. ¶ 3. Following her arrest, plaintiff pled guilty to the offense of public intoxication. Def's. Mot. Sum. J. Ex. 7 at 1-3. Plaintiff's claim that defendants lacked probable cause to arrest her implicates the validity of her conviction for public intoxication, and no claim that implicates the validity of a conviction may be asserted under section 1983 unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also McGainey v. Prince George's County,* No. 12-2080, 2013 WL 6062007, at *2 (D. Md. Nov. 15, 2013) (finding that plaintiff could not establish that officers arrested him without probable cause because when he "pled guilty to the charge of failing to obey a lawful order, plaintiff admitted that he in fact committed an offense").

In light of these undisputed facts, the defendants had probable cause to arrest plaintiff,

and plaintiff fails to demonstrate a Fourth Amendment violation for false arrest.   The officers are entitled to qualified immunity on the entirety of plaintiff's unreasonable seizure claim, and the Court **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** as to plaintiff's unreasonable seizure claim.

## V.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED in part** and **DENIED in part**.   First, the Court **RECOMMENDS** that the motion be **GRANTED** as to plaintiff's claim of excessive force with respect to the manner in which defendants restrained plaintiff to prevent her exit from the security trailer.   Second, the Court **RECOMMENDS** that the motion be **DENIED** as to plaintiff's claim of excessive force with respect to the use of tight handcuffs.   Third, the Court **RECOMMENDS** that the motion be **GRANTED** with respect to plaintiff's unreasonable seizure claim.

## VI.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that, pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing report and recommendation within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2.     A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the report and recommendation will result in waiver of the right to appeal from a judgment of this court based on such findings and recommendations.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

_____
Robert J. Krask
**United States Magistrate Judge**
_____
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
April 4, 2016